# Equitable Savings and Loan Association *v.* Roland, Appellant.

*Building and Loan associations—Treasurer—Default by treasurer—Secretary.*

The members of a building and loan association paid moneys due the association both to the secretary and the treasurer. The secretary paid the moneys handed to him either to the treasurer directly, or deposited them in the latter's account. The treasurer's accounts were kept by the secretary. In preparing a financial statement, the secretary discovered a deficit in the cash on hand. He drew an order to himself for the amount of the deficit as a loan, and after the accounts were audited he transferred the amount back to the cash account. No money was actually paid upon the order. The secretary continued for several years to conceal the deficit in this way, when he finally informed the treasurer, and the association of the state of affairs. The treasurer was apparently not aware of the deficit. When the facts came to light the treasurer gave to the association a bond and mortgage to secure the association against loss, and subse-

quently died. *Held*, (1) that the conduct of the secretary in concealing the deficit for several years did not estop the association from enforcing the mortgage against the treasurer's estate, inasmuch as the act of the secretary operated simply to the temporary relief and advantage of the treasurer; (2) that as the secretary had paid over to the treasurer all of the moneys which he received, the treasurer was liable to the association for them; (3) that on a scire facias on the mortgage, it appearing that the deficit was larger than the mortgage, the whole amount of the mortgage could be recovered.

Argued March 4, 1901.   Appeal, No. 105, Jan. T., 1901, by defendants, from judgment of C. P. Berks Co., Feb. T., 1896, No. 86, on trial by the court without a jury in case of Equitable Savings & Loan Association of Reading v. Annie E. Roland, Executrix of Francis Roland, Deceased, with notice to Francis Roland Jr., and Frederick Roland, Terre-Tenants.   Before McCollum, C. J., Mitchell, Fell, Brown and Mestrezat, JJ.   Affirmed.

Scire facias sur mortgage.

Trial by court without a jury under the act of April 22, 1874.

Endlich, J., filed the following opinion:

1. The plaintiff is a building association organized and incorporated in 1870.

2. Its by-laws provide, in article 3, section 4, that the treasurer of the association shall receive and keep all moneys paid for its use, keep a correct account thereof, and of all moneys paid out in a book provided for that purpose, and make monthly reports of the transactions and the actual state of the finances; and in article 3, section 5, that the secretary shall keep the minutes, attest orders upon the treasury, notify the directors of special meetings, keep all books and papers except those in charge of the treasurer, examine and report upon titles, prepare bonds, mortgages, etc., and perform such other duties as may be enjoined upon him by the constitution, by-laws, or rules and regulations of the directors.

3. From 1893 to May 29, 1894, Francis Roland, Sr., was the treasurer of the plaintiff association, whilst, from its organization down to the present time, his personal friend, George M. Ermentrout, has been its secretary.

4. During a number of years previous to May 29, 1894, payments due the association were received indiscriminately by both treasurer and secretary. The amounts received by the latter were receipted for in the name of the treasurer, and were either turned over to him or deposited to his credit in bank. The accounts, books, and reports required by the by-laws to be kept and made by the treasurer with and to the association were made up by the secretary in the name of the treasurer.

5. In the spring of 1891, in preparing the financial statement of the treasurer for submission to the board of directors and audit, the secretary discovered a deficit in the cash on hand of $4,000. He drew an order to himself for that amount as a loan. No money was paid to any one upon that order, but the amount called for by it was made to appear in the statement as having been loaned, and thus the shortage was concealed from the auditors. After their investigations had been completed and their report made, the amount was by the secretary transferred back to the cash account. In the following spring, 1892, the secretary found the deficit in this account to be $3,400, and the same method was pursued by him to cover it up; and so again in the spring of 1893, when the deficit was $4,500, the only difference being in the amounts and in the fact that the last order, instead of being drawn to " Geo. M. Ermentrout, for loan account," was drawn simply to " Loan Account," and the orders referred to being respectively No. 5–180, April 30, 1891, $4,000; No. 5–249, April 30, 1892, $3,400; No. 5–521, April 29, 1893, $4,500. While all this was going on, the treasurer himself was not informed by the secretary of the existing shortage or of the means employed for concealing it, indeed, did not know there was a shortage at all. The secretary did, however, at various times, call his attention to the fact that he was careless in his deposits and that he ought to be a little more careful in collecting money and taking care of it.

6. In the spring of 1894, the secretary concluded that he " could not carry this thing along any further," and notified first the treasurer and then the association of the state of affairs as he understood it to be.

7. The result of the investigations and negotiations that followed this disclosure was, that on May 29, 1894, the treasurer executed and gave to the plaintiff a bond and mortgage for

$4,500, payable, with interest, in one year from that date, it being, at the same time, agreed between the mortgagor and the mortgagee, " that if, upon an examination of the accounts of said Francis Roland, as treasurer of said association, an error shall be discovered whereby the amount demanded by said association shall be ascertained to be less than the present demand, such sum as the demand shall be reduced shall be credited upon the mortgage and bond above referred to.  It being distinctly understood that the execution of said mortgage shall not be construed into an admission on the part of said Francis Roland that the amount due from him as such treasurer is equal in amount to the present demand made upon him, and he is not to be precluded from having the sum due upon said mortgage reduced to the actual amount which may be shown to be due upon a final settlement and adjustment of his accounts."

8. An examination of those accounts shows, that, on May 29, 1894, Francis Roland, Sr., as treasurer of the plaintiff association, was indebted to it in the amount of $6,131.71, the actual deficit between the cash received by him and that accounted for by him in his official capacity.

9. The said sum of $6,131.71 remains unpaid and due to the plaintiff association, which, for that reason, has brought this suit to enforce the mortgage of May 29, 1894.

### DISCUSSION.

There is in the evidence of this case no warrant for a contention that the deficit in the association's treasury was due to failure on the part of the secretary to turn over moneys collected by him to the treasurer.   Under the peculiar system pursued, it cannot be doubted that the secretary was in a position to withhold sums to practically any amount and cause the treasurer to charge himself with them, in ignorance of the facts. But the commission of so gross a wrong is not established by proof of frequent opportunities for committing it: Pollock v. Pollock, 71 N. Y. 137.   The secretary's testimony is positive that he handed over every cent he took in and is supported by the presumption, which, notwithstanding his acknowledged breach of duty towards the association, obtains in favor of his honesty in dealing with his friend : Lerch v. Bard, 162 Pa. 307.

As opposed to this, there is only the testimony, that, shortly after he himself had brought to light the real state of affairs, the secretary remarked to one or perhaps two persons that he would plead guilty and go to jail, or something to that effect: none of which he denies.   His saying it, however, would seem to show, not at all that he had appropriated the missing money to his own use, which he had never admitted, but that, by his manipulation of the society's accounts, which he had admitted, he was conscious of having offended against the Act of June 12, 1878, P. L. 196.

It is immaterial whether the secretary be regarded as having received the moneys taken in by him with authority, express or implied, from the association, and therefore as its agent for the receipt of them, or as the treasurer's agent, or as the agent of the persons indebted to the association.   All that was received by the secretary went either into the treasurer's hands or was deposited to his credit in bank.   Having thus actually obtained it, he was accountable for it.   Nor is it significant that his books were kept and his financial statements and reports prepared by the secretary.   So long as there is no proof—and there is not even room for suspicion—that they were in fact incorrect, charged the treasurer with more than he had received or credited him with less than he had actually paid out—in short, that his confidence was abused and his trust imposed upon by the secretary, his adoption of them makes them his own and fixes his liability in accordance with them.   And, finally, it cannot be successfully asserted that the secretary's wrongful concealment from the association, during three years, of the deficit existing in its treasury, operates to relieve the treasurer from the obligation to make it good.   If the proper view of the relation of the secretary to the treasurer is that the former was acting as agent or clerk for the latter, then the secretary's wrongful acts, together with all the knowledge he had of the actual state of affairs, would have to be imputed to the treasurer and treated as his own : Lerch v. Bard, 162 Pa. 317.   And of course a man cannot escape a liability by his own improper conduct. If, on the other hand, the secretary is not to be looked upon as having acted, in these matters, on behalf of the treasurer, but as distinct from and independent of him, then one of two things must be true; either he must have acted upon his individual

responsibility, in which case his actions in the premises could have no effect whatever upon the claim of the society against its treasurer (Gass v. Citizens' Bldg. & Loan Assn., 95 Pa. 101; Johnston v. Elizabeth Bldg. & Loan Assn., 104 Pa. 394,) or it must appear affirmatively that he acted as an officer of the society clothed with authority, or in the course of the business in the transaction of which he possessed authority to bind the association by what he did.   See same cases, and Erthal v. Glueck, 10 Pa. Superior Ct. 402.   Of this there is no proof.   However ample the powers of the secretary in this association, as a sort of general manager of its business, may have been, they certainly did not extend to the cancelation of debts due it without a show of repayment.   Even the directors cannot do that: Callahan's App., 124 Pa. 138.   Of course, there can be no question of an estoppel in this case, operating, on the ground of the manipulated financial statements, to preclude the plaintiff from showing the existence of a deficit in the treasury and holding the treasurer to reimbursement.   In controversies between the association and its members, or outsiders, a certain prima facie weight is attached to such statements : Lepore v. Twin Cities National Bldg. & Loan Assn., 5 Pa. Superior Ct. 276 ; Winget v. Quincy Bldg. & Homestead Assn., 128 Ill. 67 ; Holgate v. Shutt, L. R. 27 Ch. D. 111.   But to say that an untruth introduced into, and for several years carried along in, the financial statements of the society by the treasurer, or by the secretary for the treasurer's protection, cannot, because so successfully concealed as to have remained undetected by successive auditing committees, be shown to be an untruth, is against all reason.   Nor is the proposition aided by the added fact, probably to be accepted as such in this case, that the treasurer himself was ignorant of the existence, or at least the precise extent of the deficit, and the consideration that he may have been misled by the fictitious " loan account" to think that he owed the society nothing.   The treasurer's liability to the society for moneys received by him for it and retained by himself was absolute.   It did not depend upon his being conscious, at the time, or at any time, of the fact that he had retained such money, nor was it conditional upon his being reminded, from time to time, that the cash in the treasury was less than it ought to be, or advised that the deficit was so and so much.   Being indebted

to the plaintiff association, from 1891 down, for moneys belonging to it and erroneously or unconsciously retained by him, the concealment of that fact by the secretary operated simply to the temporary relief and advantage of the treasurer. It did not create any situation whatever. It simply left him in the situation in which he had put or thereafter chose to put himself. There is, therefore, nothing in the secretary's actions or omissions in the premises which could make proof of the real state of facts a fraud, or such an injury as would be equivalent to a fraud, by the association upon him. Consequently, there is no ground whereon to raise an estoppel against it in his favor: Woods v. Wilson, 37 Pa. 379. Indeed, the inadmissibility of any such defense is one of those things, in the language of KEITH, P. J., in Smoot v. People's Perpetual Loan & Bldg. Assn., 29 S. E. Repr. (Va.) 746, "so clear that the attempt to elucidate them serves rather to obscure."

### FINDINGS OF LAW.

1. The amount of the shortage in the treasury of plaintiff association on May 29, 1894, was then legally chargeable to Francis Roland, Sr., treasurer of said association.

2. The mortgage given May 29, 1894, by Francis Roland, Sr., to plaintiff association is an available and enforceable security in its hands for the collection of the amount due said association by said Francis Roland, Sr., as treasurer thereof, to the extent of $4,500, with interest thereon from the date of the mortgage.

3. The amount due plaintiff association by Francis Roland, Sr., as treasurer thereof, on May 29, 1894, being in excess of $4,500, with interest thereon from the date of the mortgage, plaintiff is entitled to judgment in this action for the full amount of said mortgage and interest.

And now, December 11, 1899, it is ordered that the foregoing decision be filed in the office of the prothonotary, and that he forthwith give notice thereof to the parties or their attorneys in conformity with the Act of April 22, 1874, P. L. 109, sec. 1.

Exceptions to the opinion were subsequently dismissed, and judgment was entered for plaintiff.

*Error assigned* was in entering judgment for plaintiff.

*William Kerper Stevens*, of *Stevens & Stevens*, for appellants.—
Where a treasurer and secretary of an association are each authorized to receive moneys and are accustomed so to do, in order to hold either, the amount actually received by him must be proved.

The audit of the accounts of the secretary and treasurer, at which both were present, having disclosed a loan regularly made by the association to the secretary in the sum of $4,500, is conclusive, and the secretary is estopped from denying the validity of this loan : 4 Thompson on Corporations, sec. 4731 ; Waite v. Windham County Mining Co., 36 Vt. 18.

*C. H. Ruhl*, for appellee.


PER CURIAM, April 1, 1901 :
The judgment in this case is clearly right and it is affirmed on the opinion of the learned judge of the common pleas.